Filed 8/30/21  In re M.G. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | B310070 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.P., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP02966) |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Dismissed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

J.P. (Mother) appeals from a jurisdictional order of the juvenile court asserting jurisdiction over her four children. The court found it had jurisdiction on several bases, some involving Mother's alleged failure to protect the children from S.C., Mother's live-in boyfriend and father of two of her children, and some involving S.C.'s substance abuse and an incident of S.C. inappropriately disciplining one of the children. Even if Mother is correct that substantial evidence does not support the court's finding that she failed to protect the children, the juvenile court would still have correctly taken jurisdiction over them based on the unchallenged jurisdictional findings regarding S.C.'s conduct. As such, Mother's appeal does not present a justiciable controversy and is moot. We decline to exercise our discretion to nevertheless consider the merits of her appeal. Accordingly, the appeal is dismissed.

## FACTS AND PROCEEDINGS BELOW

### A. *Family Background*

Mother has four children: A.G. (born June 2009), M.G. (born July 2008), D.C. (born April 2014), and Se.C. (born November 2019). S.C. is the father of D.C. and Se.C. A.G. and M.G.'s father is now deceased.

Mother has one prior referral to the Los Angeles Department of Children and Family Services (DCFS) for general neglect. Namely, on March 16, 2015, Mother left M.G. and D.C., then ages six and 11 months, unsupervised in an unlocked car while Mother went into a store to shop with A.G. When law enforcement arrived on the scene, the children appeared "fine and well cared for." The referral was substantiated and closed.

Mother has no criminal history except for a 2010 arrest for "PC-Force/ADW not firearm:  GBI Likely."

S.C.'s criminal history includes numerous arrests and five convictions related to substance abuse and/or driving under the influence.

**B.    *Circumstances Leading to Detention and Welfare and Institutions Code section 300[1] Petition***

The family most recently came to the attention of DCFS when M.G. reported a January 31, 2020 argument between Mother and S.C. that resulted in police involvement. Specifically, M.G. woke up and saw Mother yelling at S.C. to leave the home and threatening to call law enforcement if he did not.  S.C. eventually left the home and law enforcement arrived a few minutes thereafter.  M.G. indicated that "either [S.C.] or [the maternal] grandfather was drunk" during the incident.  According to M.G., S.C. often came home drunk, and M.G. assumed that was why Mother and S.C. were fighting. Mother and the children spent the rest of the weekend at the maternal aunt's home.  A couple of days thereafter, S.C. returned to the family home.

M.G. denied the argument resulted in any physical violence, but indicated that "a long time ago," S.C. went to jail because he grabbed M.G. by the neck and the maternal grandfather had to pull S.C. off of the child.  A.G. similarly reported that she had observed S.C. choke M.G. on one occasion. M.G. further reported that in approximately 2019, S.C. had

---

[1] All further statutory references are to the Welfare and Institutions Code.

attempted to hit M.G. "after the child tried to defend his mother," and that Mother had called the police.

Mother and S.C. frequently argued, usually when S.C. came home drunk. M.G. indicated S.C. was under the influence of alcohol "like almost every week" and that he would smoke marijuana outside or at a friend's home. A.G. reported observing this same behavior. M.G. admitted he did not have a good relationship with S.C., but both A.G. and M.G. denied being afraid of S.C.

S.C. indicated he used recreational marijuana three to four times a week, that he did not smoke near the children, that in 2019 he had abused Xanax and cocaine, and that he drank alcohol on the weekends. He had completed a DUI program in 2018, which was an "eye opener." Like Mother, he denied any domestic violence, but acknowledged arguing with Mother. According to S.C., when he came home intoxicated, Mother would become upset easily and ask him to leave, which he did.

S.C. denied ever physically assaulting M.G. He reported that in January 2020, however, M.G. was playing with a pocket knife and threatened S.C. with it, so S.C. wrapped his arms around M.G. to take the knife away from him. D.C. similarly reported seeing S.C. wrap his arms around M.G.'s neck to take a knife away from M.G. on one occasion. This occurred on a weekend when Mother had left M.G. and A.G. in S.C.'s care while she, A.G., and Se.C. attended A.G.'s cheer competition in Las Vegas, something Mother has done more than once. According to M.G., S.C. took the knife from him on this occasion, but had choked him on a separate occasion. M.G. believed S.C. had choked him on that separate occasion likely because M.G. was "being annoying." S.C. told Mother about the incident with

4

the knife the weekend it occurred. Mother was very upset when she learned about it, and considered immediately driving home from the cheer competition, but did not ultimately do so.

Mother acknowledged S.C. had a drinking problem and needed to deal with it, and was aware he had been arrested multiple times for driving under the influence of drugs and alcohol, including Xanax and cocaine. Mother denied domestic violence in the home, but acknowledged she and S.C. would argue. The arguments usually occurred because S.C. was under the influence of alcohol. The sheriff's department call logs indicate that in October 2020, Mother called law enforcement for assistance when S.C. was throwing items around the house. On that occasion as well, Mother denied domestic violence, but disclosed S.C. had arrived home drunk and "snapped" her computer.

Mother denied ever seeing S.C. harm or physically discipline M.G., and indicated spanking was not allowed in the home. Mother wanted to continue her relationship with S.C. as long as he stayed sober and was able to recognize how his behavior impacted the children. Mother had evicted the maternal grandfather from the home due to his drug addiction and felt S.C. should be held to the same standard.

S.C. indicated he did not feel the family had any underlying issues that needed to be addressed and initially refused to drug test for DCFS, but ultimately complied. His drug tests in April and May 2020 were positive for marijuana.

On June 2, 2020, DCFS filed a section 300 petition on behalf of the children alleging S.C. physically abused M.G. and was a current abuser of alcohol, marijuana, cocaine, and Xanax, and that Mother failed to protect the children from S.C.

5

In a detention report filed concurrently with the petition, however, DCFS also reported that "Mother ha[d] demonstrated protective capacity by calling law enforcement in the past when domestic disputes would take place when S.C. was under the influence of alcohol. Mother also has insight into the family problems and is cooperative and willing to enroll in services in order to address issues at hand. Furthermore, [M]other has demonstrated willingness to enroll in services by enrolling in parenting classes on her own." The social worker noted that Mother "ha[d] demonstrated she is willing and able to protect all her children from further harm or risk of harm and [was] able and willing to cooperate with [the] court and DCFS."

On June 5, 2020, the juvenile court ordered D.C. and Se.C. detained from S.C. and ordered the children released to Mother.

C.    ***Jurisdictional Hearing***

In additional reports filed in advance of the jurisdictional hearing on the petition, DCFS reported the details of S.C.'s criminal history and additional statements from the family and extended family. These were generally consistent with previous statements, except that M.G. denied S.C. had ever physically disciplined him or hurt him on any occasion other than when he had grabbed him around the neck and choked him. According to Mother, since DCFS's intervention, S.C. had slowed down his drinking. Mother did not believe S.C. had a substance abuse problem. She denied ever leaving the children in his care while he was under the influence, stating she was always present. Mother completed parenting education and was participating in family preservation services, including individual counseling. S.C. was living in a friend's garage and denied continued drug use, but stated he was unable to test due to his work schedule.

6

S.C. had completed a parenting program and had been attending a domestic violence program for three months.

At the jurisdiction/disposition hearing, the children's counsel argued in favor of sustaining all counts in the petition. The children's counsel specifically argued that Mother had failed to protect M.G. by leaving him in S.C.'s care while she went out of town to cheerleading competitions with A.G., despite knowing that M.G. and S.C. "do not get along." The juvenile court found S.C.'s actions were disciplinary in intent, amended the petition to reflect this, and sustained all counts as amended.[2]

The court declared the children dependents of the court under section 300, subdivisions (b) and (j), ordered D.C. and

---

[2] The sustained allegations of the petition provide in pertinent part that S.C. "inappropriately physically disciplined the child M.G. by grabbing the back of the child's neck and choking the child"; that "[Mother] knew or reasonably [should] have known of the inappropriate physical discipline of the child by [S.C.] and failed to protect the child by allowing [S.C.] to reside in the child's home and have unlimited access to the child"; that "[S.C.] has a history of substance abuse and is a recent abuser of alcohol, marijuana, cocaine, and Xanax, which renders [him] incapable of providing regular care of the children. On prior occasions, [S.C.] was under the influence of alcohol while the children were in [S.C.'s] care and supervision. . . . The children [D.C.] and [Se.C.] are of such young age requiring constant care and supervision and [S.C.'s] substance abuse interferes with providing regular care and supervision of the children. [S.C.] has a criminal history of a conviction for DUI [a]lcohol 0.08 [p]ercent. [Mother] knew of [S.C.'s] substance abuse and failed to protect the children by allowing [him] to reside in the children's home and have unlimited access to the children."

Se.C. removed from S.C.'s custody, ordered the children released to Mother's custody, and ordered services for the family. Mother timely appealed. In her appeal, she challenges the court's jurisdictional findings that she failed to protect the children. Neither Mother nor S.C. challenged the court's jurisdictional findings regarding S.C.

### D. *Post-Appeal Developments*

While this appeal was pending, the juvenile court terminated its jurisdiction over all the children, granted Mother and S.C. joint legal custody over Se.C. and D.C., and granted Mother sole physical custody over A.G. and M.G. Mother timely appealed the court's exit order.

## DISCUSSION

DCFS argues that Mother's appeal from the juvenile court's jurisdictional order should be dismissed as moot. Specifically, DCFS argues we can no longer grant Mother any effective relief, because the juvenile court has since terminated jurisdiction over all four children, restored Mother's full custody over A.G. and M.G., and granted Mother and S.C. joint legal and physical custody of D.C. and Se.C. (See *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent events, including orders by the juvenile court, render it impossible for the reviewing court to grant effective relief"].)

But even before the juvenile court terminated jurisdiction, Mother's appeal did not present a justiciable issue. In an appeal from a juvenile court's jurisdictional order, we consider the correctness of the overall jurisdictional ruling—that is, whether the court correctly concluded it had jurisdiction over the children at issue. (See *In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599.)

8

Here, the juvenile court's jurisdictional findings based on S.C.'s conduct have not been challenged on appeal and were independently sufficient to create jurisdiction over the children. (See *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 ["[t]he reviewing court may affirm . . . if the evidence supports the decision on any one of several grounds"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].) Thus, regardless of the outcome of Mother's appeal, the court correctly found that it had jurisdiction over the children, and we "need not consider whether any or all of the other alleged statutory grounds for jurisdiction [involving Mother] are supported by the evidence." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762 (*Drake M.*).)

Mother argues that we should exercise our discretion to nevertheless consider the merits of her appeal, because the "outcome of [the] appeal is the difference between [Mother] being an 'offending' parent versus a 'non-offending' parent," something that "may have far-reaching implications with respect to future dependency proceedings." (*Drake M., supra,* 211 Cal.App.4th at p. 763.) We disagree that the potential effects of such a finding on the facts of this case are inherently so "pernicious" as to alone warrant an exercise of our discretion. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *ibid.* [a finding "that [the] mother failed to protect the children from a substantial risk of sexual abuse[ ] carrie[d] a particular stigma" warranting consideration of an otherwise nonjusticiable appeal].) Nor has she identified any specific potential effects the findings may have in future proceedings. Moreover, the circumstances underlying the failure to protect allegations can be considered in a future dependency court proceeding regardless of whether we reverse the finding, and any future dependency case would need to be based on

conditions existing at the time such a case is filed. (See *In re Madison S.* (2017) 15 Cal.App.5th 308, 330 ["the substance of the spanking allegation would almost certainly be available in any future dependency or family court proceeding, regardless of any determination on our part as to whether it formed an independent basis for juvenile court jurisdiction"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494−1495 [the father "fail[ed] to suggest any way in which th[e] [jurisdiction] finding actually could affect a future dependency or family law proceeding, and we fail to find one on our own. In any future dependency proceeding, a finding of jurisdiction must be based on current conditions."].)

We decline to exercise our discretion to consider the merits of Mother's appeal.

**DISPOSITION**

The appeal is dismissed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


CRANDALL, J.*

---

**\*** Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.